# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA ELSAYED, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 8387 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VILLAGE OF SCHAUMBURG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jessica Elsayed filed this suit against the Village of Schaumburg, Schaumburg police officers Matthew Hudak and Terrance O'Brien, and a group of unknown Schaumburg police officers, alleging violations of her rights under 42 U.S.C. § 1983.[1] R. 5, First Am. Compl. She also brings claims under Illinois law for false arrest, malicious prosecution, intentional infliction of emotional distress, respondeat superior, and conspiracy. *Id.* Defendants now move to dismiss Elsayed's complaint under Federal Rule of Civil Procedure 12(b)(6). R. 16, Mot. Dismiss. In response, Elsayed moves to amend her complaint. R. 17, Pl.'s Resp. Br. at 2. For the reasons discussed below, Defendants' motion to dismiss is granted in part (the federal claims are dismissed), Elsayed's motion to amend is denied, and supplemental jurisdiction is relinquished on the state-law claims.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Elsayed's federal-law claims, and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims. Citations to the docket are "R." followed by the entry number and, when necessary, the page/paragraph number.

## I. Background

In evaluating the motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Elsayed's favor. *Ashcroft v. al–Kidd,* 131 S.Ct. 2074, 2079 (2011). On October 7, 2011, Officers Matthew Hudak and Terrance O'Brien stopped a car driven by JessicaElsayed's brother, Daniel. First Am. Compl. ¶ 10. Jessica was in the passenger seat. *Id.* During the traffic stop, the officers searched Jessica's purse and found, according to the officers, "37 pills of Ecstasy, 65 grams of cannabis, and four capsules." *Id.* ¶ 21. Jessica was then arrested for possession of a controlled substance with intent to deliver. *Id.* ¶ 2. She was arraigned on December 1, 2011. *Id.* ¶ 8.

Shortly after her arraignment, Jessica moved to quash her arrest and suppress the drugs found in her purse. *Id.* ¶ 9. At the hearing on the motion to quash, the state court heard testimony from Daniel Elsayed, Hudak, and O'Brien. *Id.* ¶¶ 10, 14, 20. O'Brien testified that he asked Jessica if she had "anything illegal on her" after learning that Hudak had found cannabis on Daniel. *Id.* ¶ 20. According to O'Brien, Jessica volunteered that she had "some weed and Ecstasy in her purse." *Id.* Based on this statement, O'Brien searched the purse and recovered the drugs. *Id.* ¶ 21. He then arrested Jessica for possession of a controlled substance with intent to deliver. *Id.* Relying on the officers' testimony, the state-court judge denied Jessica's motion to quash her arrest and suppress evidence. *Id.* ¶¶ 25-26. Because the motion was denied, Jessica pled guilty to the charges against her on May 7, 2012. *Id.* ¶ 26.

Several months later, Hudak and O'Brien were themselves charged, in state court, with crimes: delivery of a controlled substance, official misconduct, burglary, and armed violence. Mot. Dismiss at 2; First Am. Compl. ¶ 2. Hudak and O'Brien committed these crimes throughout 2012. First Am. Compl. ¶ 27. After Hudak and O'Brien were indicted, Elsayed moved to withdraw her guilty plea and to vacate the judgment against her. *Id.* Because the testimony of these officers was the basis for denying Elsayed's motion to quash her arrest and suppress evidence, the judgment against Elsayed was vacated on October 25, 2013. *Id.* ¶ 29. Elsayed filed this lawsuit on October 24, 2014, alleging violations of her constitutional rights and several state-law causes of action relating to her arrest and prosecution. *See* R. 1, Compl.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. False Arrest / False Imprisonment

In Count 1 of her complaint, Elsayed alleges that Hudak and O'Brien violated her constitutional rights when they arrested her without probable cause or lawful justification. First Am. Compl. ¶¶ 30-35. Defendants argue that Elsayed's false arrest and false imprisonment claims—which really are Fourth Amendment claims—are time-barred. Mot. Dismiss at 4-5. The Court agrees. The statute of limitations for claims under § 1983 is drawn from "the personal injury laws of the state where the injury occurred." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). In Illinois, that period is two-years. 735 ILCS 5/13-202; *see also Woods v. Illinois Dept. of Children and Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("[W]e reiterate our holding that the limitations period applicable to *all* § 1983 claims brought in Illinois is two years[.]"). The date that a cause of action under

§ 1983 accrues is a question of federal law, and a claim for false arrest or false imprisonment accrues "at the time the claimant becomes detained pursuant to legal process."[2] *Wallace v. Kato*, 549 U.S. 384, 388, 397 (2007); *see also Serino v. Hensley*, 735 F.3d 588, 590-91 (7th Cir. 2013). For her claim to be timely, Elsayed had to file her false-arrest and false-imprisonment claims no later than December 2, 2013, two years after she was arraigned. *See Wallace*, 549 U.S. at 390 (identifying arraignment as the type of legal process that will trigger the accrual of a claim for false imprisonment). This suit was filed in October 2014, well after the two-year limitations period.

In response, Elsayed argues that her false imprisonment claim did not accrue until her conviction was vacated on October 25, 2013. Pl.'s Resp. Br. at 8-9. Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Elsayed contends that she could not have proceeded with her false-arrest claim before her conviction was vacated because the claim would have been inconsistent with the validity of the conviction. Pl.'s Resp. Br. at 8. But that is wrong. The Seventh Circuit has consistently applied the holding of *Wallace v. Kato* (and even before *Wallace*) that "a claim for false arrest, because it does not by its nature call into question the validity of a conviction, may go forward immediately, without nullification of the underlying criminal conviction."[3] *Reynolds v. Jamison*, 488 F.3d 756, 766-67 (7th Cir. 2007) (citing

---

[2]Because "[f]alse arrest and false imprisonment overlap," *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007), the Court will treat them interchangeably for the purposes of this motion from here on out.

[3]Moreover, Elsayed does not satisfactorily explain *why* her claim for false arrest would necessarily impugn her conviction. Her claim is that Hudak and O'Brien did not have

5

*Wallace*, 549 U.S. 384); *see also, e.g., Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012); *Newsome v. McCabe*, 256 F.3d 747, 749, 751-52 (7th Cir. 2001); *Gonzales v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998). The cases cited by Elsayed do not undermine this principle. *See Tillman v. Burge*, 813 F. Supp. 2d 946, 969-71 (N.D. Ill. 2011) (dismissing claim for false arrest under § 1983 as untimely, but holding that plaintiff's claim of coerced confession in violation of Fifth Amendment would have impugned his conviction); *Boyd v. City of Chicago*, 2014 U.S. Dist. LEXIS 113757, *3-8 (N.D. Ill. Aug. 6, 2014) (discussing claim for violation of due process, not false arrest); *Saunders v. City of Chicago*, 2014 U.S. Dist. LEXIS 94249, *10-20 (N.D. Ill. July 11, 2014) (same). Any claim based on the fabrication of evidence might be timely based on the reasoning of *Tillman*, *Boyd*, or *Saunders* (like the due process claim discussed below), but the claim for false arrest accrued at the time Elsayed was held pursuant to legal process, that is, when she was arraigned. Because Elsayed did not file her false-arrest claim within two years of her arraignment, the claim is dismissed.

### B. Malicious Prosecution

Elsayed's second claim is for malicious prosecution under § 1983. First Am. Compl. ¶¶ 36-40. To be precise, this is really a due-process claim, because § 1983 is not itself the source of rights; instead, it is merely the procedural vehicle by which claims are brought under other provisions of federal law. Defendants are correct that there is no cognizable claim for malicious prosecution under § 1983 where a

---

probable cause to arrest her, but she does not allege that she did not have the drugs in her purse. *See generally* First Am. Compl. Her claim of a no-probable-cause arrest can coexist with her ultimate guilty plea for possession with intent to deliver.

6

State's courts are open to providing an adequate post-deprivation remedy. *See Newsome*, 256 F.3d at 750-51. Based on the reasoning of *Parratt v. Taylor*, 451 U.S. 527 (1981), *Newsome* held that a § 1983 claim based on the due process clause of the Fourteenth Amendment—such as a claim for malicious prosecution—is not actionable so long as the State provides an adequate post-deprivation remedy. *See Newsome*, 256 F.3d at 750-51; *Llovet v. City of Chicago*, 761 F.3d 759, 760-61 (7th Cir. 2014). Illinois provides such a remedy. *Llovet*, 761 F.3d at 760-61 (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Any claim for malicious prosecution under § 1983 must therefore be dismissed.

Elsayed tries to rescue her malicious prosecution claim by recasting it as one for a violation of due process based on the "fabrication of evidence." Pl.'s Resp. Br. at 5-7. Elsayed is correct that the Seventh Circuit has recently limited the scope of *Newsome* and clarified that a cause of action under § 1983 for violation of due process may be valid where government agents have fabricated evidence. *See, e.g.*, *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) (holding that it is clearly established federal law that fabrication of evidence by prosecutor is violation of due process). Although there is no precision in drawing the line between a due-process claim for malicious prosecution (not valid where State provides post-deprivation process) and a due-process claim based on fabrication of evidence (might be valid), there is no question that fabrication of evidence by prosecutors or police officers remains potentially actionable under § 1983.[4] *See Saunders-El v. Rohde*, 778 F.3d

---

[4]Defendants' argument that Elsayed improperly labelled her second count is unconvincing. Plaintiffs in federal court are not required to plead legal theories. *Del*

7

556, 560 (7th Cir. 2015) ("[T]he district court erred in holding, *categorically*, that a claim of evidence fabrication cannot form the basis of a due process claim under § 1983 and must instead be brought as a state law malicious prosecution claim."). Nevertheless, Elsayed's particular due-process claim fails for two reasons.

As is clear from the text of the Fourteenth Amendment, to state a claim for a deprivation of due process, Elsayed must allege a deprivation of a liberty or a property interest. *See Alexander*, 692 F.3d at 557 (holding that there could be no due process violation when plaintiff was not deprived of liberty based on fabrication of evidence); *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) (describing "deprivation of a cognizable property or liberty interest" as a "standard element[ ] of a due process claim"); *see also* U.S. Const. amend. XIV. Her first amended complaint does not do so. Elsayed does allege that she "suffered loss of liberty," *id.* ¶ 40, but she does not allege any factual matter to support that bare legal assertion, *see Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"). Elsayed does not allege that she was imprisoned (either when awaiting trial or after the guilty plea as part of a sentence), nor does she allege any other fact (as distinct from a legal conclusion) that would constitute a deprivation of liberty.[5] The same goes for a

---

*Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (en banc) (per curiam). Nor is it dispositive that the allegations in Elsayed's second count do not discuss fabricated evidence, as the claim incorporates the preceding factual allegations by reference. First Am. Compl. ¶ 36.

[5]Of course, Elsayed's initial arrest was a deprivation of liberty, but that deprivation is addressed by her claim under the Fourth Amendment. *See Alexander*, 692 F.3d at 558 ("The Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest.").

8

property deprivation: there is no mention of any monetary fine or other property of which she was deprived. Nor does this issue come as a surprise, because Elsayed was put on notice of Defendants' argument that she could not state a § 1983 malicious-prosecution claim, yet she did not plead any additional facts that would support the elements of a due-process claim in her proposed second amended complaint. *See generally* R. 17-1, Second Am. Compl. (labelling Count 2 as "malicious prosecution in violation of due process" but adding no additional factual matter).

There is a second problem with the due-process claim, even assuming Elsayed might be able to amend her complaint to allege a deprivation of liberty or property. She cannot plead around Hudak and O'Brien's absolute immunity to suit for the misconduct that she asserts. Elsayed's *only* allegation that could support a due-process claim based on fabrication of evidence is that Hudak and O'Brien lied at the hearing on her motion to quash her arrest and to suppress evidence. Pl.'s Resp. Br. at 7. But witnesses at pretrial proceedings are entitled to absolute immunity for their testimony.[6] *Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995) ("[Police

---

[6]This might seem like a harsh result, but the immunity doctrine was *not* created to shield wrongdoers from the consequences of perjury. Instead, testimonial immunity from suit protects the truth-seeking function of the judicial system. For, "[a] witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." *Briscoe v. LaHue*, 460 U.S. 325, 333-34 (1983). Testimonial immunity also protects *truthful* police officers (and indirectly the public which relies on their performance), because "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.* at 343.

9

officer] is entitled to absolute immunity … for his testimony at both the preliminary hearing and the hearing on [plaintiff's] motion to quash arrest and suppress evidence."). Unlike the cases relied on by Elsayed, there are no allegations in this case that Hudak and O'Brien procured the false testimony of others or that they fabricated evidence other than their own testimony.[7] *Cf. Fields*, 740 F.3d at 1110-11 (prosecutors procured false statements from witnesses); *Whitlock v. Brueggermann*, 682 F.3d 567, 580 (7th Cir. 2012) (police officers and prosecutor procured false testimony from witnesses). Hudak and O'Brien are entitled to absolute immunity for their own testimony at the hearing on the motion to quash and suppress. Because that testimony is the only conduct that the complaint identifies as the basis for the due-process claim comprising Count 2, the count is dismissed.

### C. Supervisory Liability

In Count 3, Elsayed alleges "supervisory liability" against the unknown Schaumburg police officers. First Am. Compl. ¶¶ 41-47. But there is no vicarious liability under § 1983; supervising government officials can only be liable for constitutional deprivations caused by their own misconduct.[8] *Iqbal*, 556 U.S. at 676. It is true that a supervisor's *personal* conduct might cause a constitutional deprivation perpetrated by his subordinate if it "[that] deprivation occurs at his

---

[7]It is unclear whether a defendant's own alleged perjury, standing alone, would ever be a sufficient basis for a due-process claim based on fabrication of evidence. Those claims likely would always be barred by absolute testimonial immunity. *See Curtis*, 48 F.3d at 285. So a fabrication-of-evidence claim appears to require—at a minimum—procurement of false testimony by *other witnesses* or fabrication of other types of evidence.

[8]In this context, the Supreme Court has called "supervisory liability" a "misnomer." *Iqbal*, 556 U.S. at 677.

10

direction or with his knowledge and consent." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). "That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*; *see also Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Elsayed claims that the unknown Schaumburg police officers caused her constitutional injuries "when they failed to adequately train and supervise" Hudak and O'Brien. First Am. Compl. ¶ 42.

Defendants first argue that Elsayed's failure to name the individual officers against whom she alleges supervisory liability is fatal to her claim for supervisory liability. Mot. Dismiss at 8-9. That is not necessarily a problem. At this stage in the litigation, it is generally acceptable to refer to unknown defendants; discovery is often needed to identify a defendant or a set of defendants. What is a problem, however, is Elsayed's failure to allege sufficient facts—and not bare legal conclusions—to state a plausible claim for relief. Elsayed alleges that the supervisors "failed to adequately train and supervise the individual Defendant Officers," that they were "were personally involved in the case against Plaintiff," or that they knew or should have known "of their subordinates' unconstitutional actions." First Am. Compl. ¶¶ 42-45. According to Elsayed, this failure to train "proximately and directly caused" her injuries. *Id.* ¶ 46. Although Elsayed states many of the elements that might give rise to supervisory liability, her allegations are mere legal conclusions, not facts. *See Iqbal*, 556 U.S. at 678-79 ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation.").

Elsayed's proposed amendments to her complaint do not fix this problem. The added allegations that "Hudak and O'Brien's superior officers … were aware of Hudak and O'Brien's regular practice of arresting individuals without probable cause" do not add any *factual* matter to Elsayed's complaint; they merely reiterate the legal conclusions. Second Am. Compl. ¶¶ 28, 44. Stripped of the legal conclusions, there is essentially no factual matter—which would be taken as true in this stage of the litigation—to support a § 1983 claim against Hudak and O'Brien's supervisors. The claim for "supervisory liability" is dismissed.

In her proposed amended complaint, Elsayed also seeks to add a claim for municipal liability against the Village of Schaumburg under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). *See* Second Am. Compl. ¶¶ 56-65. Under the *Monell* theory of liability, a plaintiff may only state a claim against a municipal corporation if "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). A "widespread practice" that is not authorized by law can constitute an official policy or custom when it is "so permanent and well settled [that it is] a custom or usage with the force of law," *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006), and a municipality's failure to train can constitute an official custom "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton*, 489 U.S. at 388.

Here, Elsayed alleges that Schaumburg has "a widespread custom, practice and de facto policy of encouraging and permitting its police officers to make arrests without probable cause … [and] to provide false testimony." Second Am. Compl. ¶¶ 58, 60. She also alleges that Schaumburg fails to train and supervise its police officers. *Id.* ¶ 59. Both of these policies, according to Elsayed, were "the moving force behind" Hudak and O'Brien's misconduct. *Id.* ¶ 65. Although Elsayed hits on all of the elements of a *Monell* claim, she again fails to allege sufficient factual matter, taken as true, to state a plausible claim for relief. If the Court sets aside the formulaic recitation of the elements of a *Monell* claim, the only factual allegations remaining as possible support of the allegations of an unconstitutional policy are those describing Hudak and O'Brien's wrongdoing. *Id.* ¶¶ 61-62. The mere fact that a municipality's employee committed a constitutional violation is not sufficient to allege a custom or practice by that municipality. If it were, *Monell* liability would accompany nearly every § 1983 claim. Because Elsayed's proposed amended complaint would not survive a motion to dismiss, her motion to amend is denied. *See Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011) ("[A] district court may deny a motion to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.") (internal quotation marks and citation omitted).

### D. Conspiracy

Elsayed's final federal claim is for conspiracy under § 1983. First Am. Compl. ¶¶ 48-53. "[C]onspiracy is not an independent basis of liability in § 1983 actions."

*Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Conspiracy claims are dependent on the underlying constitutional injury. *See Drager v. Village of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013). Because Elsayed's other federal claims have been dismissed, the conspiracy claim must be dismissed as well. *See Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011).

### E. State-Law Claims

Elsayed also brings claims under Illinois law for false arrest, malicious prosecution, intentional infliction of emotional distress, respondeat superior, and conspiracy. When all federal claims in a lawsuit have been dismissed, there is a presumption that the federal court will relinquish jurisdiction over the remaining state-law claims. *See RWJ Mgmt. Co. v. BP Prods. North America, Inc.*, 672 F.3d 476, 479 (7th Cir. 2012); *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This is because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Seventh Circuit has identified three unusual situations that might displace the presumption that jurisdiction should be relinquished: (1) "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "when substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; and (3) "when it

14

is absolutely clear how the pendent claims can be decided." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citations omitted).

This case does not present any of these unusual situations. The statute of limitations will not preclude the filing of Elsayed's suit in state court.[9] *See* 28 U.S.C. § 1367(d) (tolling the limitations period "while the claim is pending and for a period of 30 days after it is dismissed"); 735 ILCS 5/13-217 (tolling the limitations period for one year if "the action is dismissed by a United States District Court for lack of jurisdiction"); *see also Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (affirming lower court's decision to decline supplemental jurisdiction based on tolling statutes). The Court has not expended significant judicial resources on the pendent state-law claims, and it is not obvious how the pendent claims should be decided (at least not all of them). The principles of judicial economy, convenience, fairness, and comity do not compel a different conclusion. The parties have not yet conducted any discovery, and the Illinois courts should have the opportunity to decide questions of Illinois law. *See RWJ Mgmt.*, 672 F.3d at (describing "legitimate and substantial concern with minimizing federal intrusion into areas of purely state law") (internal quotation marks and citation omitted). The Court therefore declines to exercise supplemental jurisdiction over Elsayed's pendent state-law claims. Accordingly, Counts 5 through 9 are dismissed without prejudice. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) ("Once the district court

---

[9]There are questions about the timeliness of some of Elsayed's state-law claims, but those issues will not be affected by refiling her suit in state court.

15

decline[s] to exercise supplemental jurisdiction over [state-law] claims, the proper course [is] to dismiss them without prejudice.").

## IV. Conclusion

For the reasons discussed above, Elsayed's claims under 42 U.S.C. § 1983 are dismissed. Elsayed's motion to amend her complaint is also denied, because the amendment would be futile. Because there are no remaining federal claims, the Court relinquishes jurisdiction over the related state-law claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2015